[Civ. No. 39760. First Dist., Div. Two. Feb. 28, 1977.]

BANK OF THE ORIENT, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
SAN FRANCISCO FEDERAL SAVINGS AND LOAN
ASSOCIATION, Real Party in Interest.

## COUNSEL

Angell, Adams & Holmes, Lyman G. Lea and Barry D. Hovis for Petitioner.

No appearance for Respondent.

Arthur Matin and Anthony P. David for Real Party in Interest.

## OPINION

**TAYLOR, P. J.**—Petitioner, Bank of the Orient, defendant in an action for conversion and for damages for negligence brought by plaintiff, San Francisco Federal Savings and Loan Association, real party in interest in these proceedings, seeks mandate (1) to command respondent court to order that St. Paul Fire and Marine Insurance Company be joined as a compulsory party plaintiff in this action or, in the alternative, prohibit respondent court from proceeding in this action until such joinder is effected, and order that petitioner be given leave to file its cross-complaint against St. Paul Fire and Marine Insurance Company as a cross-claim arising out of the same transaction against the real party in interest; and 2) to command respondent court to compel production of a Coopers & Lybrand "Report to Management" dated June 9, 1975, and a seven-page document of real party entitled "Suggestions for Improvement to Our System of Internal Control" and to compel real party to answer questions propounded at a deposition reasonably related to the contents thereof.

This case arises out of the embezzlement of large sums of money by Quailand Tom, former manager of the Chinatown branch of the San Francisco Federal Savings and Loan Association in San Francisco, from his employer, real party in interest herein. Tom accomplished this theft

by making unauthorized withdrawals from savings accounts by forging the signatures of savings customers on savings withdrawal applications and directing employees to issue and sign checks drawn on his employer's general operating account at Crocker National Bank for the amounts of such unauthorized savings withdrawals, which checks Tom caused to be made payable to the order of petitioner, Bank of the Orient. Tom then deposited these checks in a personal checking account which he maintained with the Bank of the Orient and subsequently withdrew the entire amount.

San Francisco Federal Savings and Loan Association was insured for losses of this nature by St. Paul Fire and Marine Insurance Company. On May 15, 1975, St. Paul Fire and Marine Insurance Company paid to San Francisco Federal Savings and Loan Association the sum of $449,829.27, for which it obtained a partial release, and on June 16, 1975, St. Paul Fire and Marine Insurance Company paid to San Francisco Federal Savings and Loan Association the sum of $124,082.48, for which it obtained a release in full. In consideration of these payments, San Francisco Federal Savings and Loan Association assigned to St. Paul Fire and Marine Insurance Company all of its claims and demands against any other party, person, or corporation arising from or connected with said loss.

On May 15, 1975, San Francisco Federal Savings and Loan Association, as plaintiff, instituted an action against the Bank of the Orient, alleging that the Bank of the Orient converted funds of plaintiff and that because of the Bank of the Orient's negligence Tom was able to accomplish his thefts, resulting in damage to the plaintiff.

Petitioner and defendant, Bank of the Orient, commenced discovery proceedings, and in the course of these proceedings, the Bank of the Orient discovered that St. Paul Fire and Marine Insurance Company was the bonding company for San Francisco Federal Savings and Loan Association and that the St. Paul Fire and Marine Insurance Company had paid the loss and had taken an assignment of the claims of San Francisco Federal Savings and Loan Association. Thereafter, on July 14, 1976, the Bank of the Orient noticed a motion for an order that plaintiff, San Francisco Federal Savings and Loan Association, be compelled to join St. Paul Fire and Marine Insurance Company as a party plaintiff and for an order that defendant, Bank of the Orient, be given leave to amend its answer and to file a cross-complaint against the joined party plaintiff. Petitioner submitted therewith a cross-complaint for declara-

tory relief, offset and damages against St. Paul Fire and Marine Insurance Company, as cross-defendant, alleging that petitioner, Bank of the Orient, was a party to an insurance agreement with St. Paul Fire and Marine Insurance Company which insured the Bank of the Orient against claims for property damage; that the policy required that cross-defendant defend any suit against it seeking damages on account of property damage, even if such suit is groundless, false or fraudulent; and that defense of the action brought against it by the San Francisco Federal Savings and Loan Association had been tendered to St. Paul Fire and Marine Insurance Company, but that St. Paul Fire and Marine Insurance Company had refused to defend, maintaining that the policy coverage did not apply and that cross-defendant had no duty to defend. On August 18, 1976, after a hearing on the motion, the court denied the motion in all respects except that petitioner was granted permission to amend its answer. Previously, on July 29, 1976, the court had denied petitioner's motion for an order compelling production of the documents hereinbefore described and for an order compelling answers to questions reasonably related to their content.

Petitioner first contends that the trial court abused its discretion in not requiring the joinder of St. Paul Fire and Marine Insurance Company as a party plaintiff, asserting that it is a real party in interest whose presence is indispensable to the determination of the liabilities alleged in the complaint. Petitioner argues (a) that the true dispute in this case is between St. Paul Fire and Marine Insurance Company and petitioner over who should bear the loss of the thefts by San Francisco Federal Savings and Loan Association's branch manager; (b) that St. Paul Fire and Marine Insurance Company caused this action to be brought by San Francisco Federal Savings and Loan Association against petitioner even though St. Paul Fire and Marine Insurance Company possessed the assigned interest of San Francisco Federal Savings and Loan Association when the action was initiated; (c) that the law precludes this ruse, for St. Paul Fire and Marine Insurance Company, as the real party in interest, is required to prosecute this action in its own name and must be joined as an indispensable party plaintiff; and (d) that as a joined party plaintiff, petitioner is entitled to leave to file its compulsory cross-complaint against St. Paul Fire and Marine Insurance Company to determine if St. Paul Fire and Marine Insurance Company's comprehensive liability coverage of petitioner insures the very loss at issue in the complaint.

We agree with petitioner's contentions. Code of Civil Procedure section 367 provides that "Every action *must* be prosecuted in the name of the real party in interest, except as provided in section three hundred and sixty-nine of this code."[1] (Italics added.) "This rule is designed to protect a defendant from a multiplicity of suits and from further annoyance and vexation, and to fix and determine the real liability which is alleged in the complaint. [Citation]." (*Space Properties, Inc.* v. *Tool Research Co.* (1962) 203 Cal.App.2d 819, 828 [22 Cal.Rptr. 166].)

An examination of the record reveals that St. Paul Fire and Marine Insurance Company, by reason of payment by it to San Francisco Federal Savings and Loan Association of the sum of $449,829.27 under its bond, became a partial assignee and subrogee of San Francisco Federal Savings and Loan Association's claims and demands arising from or connected with the loss, as shown by a partial release executed on May 15, 1975, which provided: "In consideration of such payment, the undersigned hereby assigns and transfers to the said Company each and all claims and demands against any other party, person or corporation arising from or connected with said loss, and it is agreed that the Company is hereby subrogated in the place of and to the said claims and demands of the undersigned against said party, person or corporation to the extent of payment hereby made and received, and that the said Company is hereby authorized and empowered to sue, compromise and settle in its name or otherwise to the extent of said payment and against such person or persons." The complaint, with real party San Francisco Federal Savings and Loan Association named as plaintiff, and petitioner, Bank of the Orient, named as the defendant, was filed on May 15, 1975, the same day the foregoing document was executed. That complaint sought recovery of general damages in the sum of $435,034.18, plus interest upon the sums embezzled to and including May 15, 1975, in the further sum of $25,354.03, plus interest from and after May 15, 1975.

On June 16, 1975, in consideration of the further payment of the sum of $124,082.48 by St. Paul Fire and Marine Insurance Company, San Francisco Federal Savings and Loan Association executed a release in full, in settlement and satisfaction of all claims arising by reason of the embezzlement. The June 16 release contains language with respect to

[1]Code of Civil Procedure section 369, not applicable in these circumstances, provides: "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

assignment and subrogation identical to that contained in the May 15 release.

Partial assignees are indispensable parties, according to the rule set forth in *Taylor v. Sanford* (1962) 203 Cal.App.2d 330, 347 [21 Cal.Rptr. 697]: ". . .where, in a situation such as this, there has been a partial assignment all parties claiming an interest in the assignment must be joined as plaintiffs, and as indispensable parties, the court lacks jurisdiction to proceed without them (*Grain v. Aldrich*, 38 Cal. 514 [99 Am.Dec. 423]; *Bank of California v. Superior Court*, 16 Cal.2d 516 [106 P.2d 879]; *McPherson v. Parker*, 30 Cal. 455 [89 Am.Dec. 129]; *Miracle Adhesives Corp. v. Peninsula Tile Contractors Assn.*, 157 Cal.App.2d 591. . . ." (See also *Space Properties, Inc. v. Tool Research Co., supra*, 203 Cal.App.2d, at pp. 828-829; 3 Witkin, Cal. Procedure (2d ed.) pp. 1775-1776.) The same reasoning applies to partial subrogees (3 Witkin, Cal. Procedure, *supra*, pp. 1776-1778). ■ The objection to the omission of indispensable parties is so fundamental that it need not be raised by the parties themselves; the court may, of its own motion, dismiss the proceedings, or refuse to proceed, until indispensable parties are brought in (*Bank of California v. Superior Court* (1940) 16 Cal.2d 516, 522 [106 P.2d 879]; *U-Tex Oil Co. v. Pauley* (1962) 209 Cal.App.2d 88, 95 [25 Cal.Rptr. 790]; *Miracle Adhesives v. Peninsula Tile Assn., supra*, 157 Cal.App.2d at p. 595; Code Civ. Proc., § 389, subd. (b)).

■ Code of Civil Procedure section 389, subdivision (a), as revised in 1971 (ch. 244, § 15, operative July 1, 1972), provides that "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall* be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court *shall* order that he be made a party." (Italics added.) These guidelines are substantially those that have been guiding the courts for years (commission comments, 3 Witkin, Cal. Procedure (2d ed. 1975 Supp.) Pleading, § 160C).

It is apparent, therefore, that by reason of the partial release executed contemporaneously with the commencement of this action, St. Paul Fire

and Marine Insurance Company became a partial assignee and subrogee, possessed of a substantial interest in the claims of San Francisco Federal Savings and Loan Association against petitioner, Bank of the Orient. Yet, an examination of the complaint reveals that St. Paul Fire and Marine Insurance Company has not been joined as a party (see 3 Witkin, Cal. Procedure (2d ed.) p. 1822) nor does the complaint contain any reasons why St. Paul Fire and Marine Insurance Company is not joined, as required by the provisions of Code of Civil Procedure section 389, subdivision (c).[2]

■ Real party argues that the action, once commenced in the name of San Francisco Federal Savings and Loan Association, may be so continued under the provisions of Code of Civil Procedure section 385, subdivision (a). That section provides that "An action or proceeding does not abate by the death, or any disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In the case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." We agree with petitioner that Code of Civil Procedure section 385, subdivision (a) has no application to instances where partial assignees or partial subrogees *are required to be joined.* Therefore, even if we were to assume that the *partial* assignment was not executed until *after* the complaint was filed, at the moment of its execution St. Paul Fire and Marine Insurance Company became an indispensable party to this action. To permit a partial assignee who has concealed his interest in an action to invoke the provisions of Code of Civil Procedure section 385, subdivision (a) after he has obtained a complete assignment would defeat the right of a defendant to cross-complain against any of the parties who filed the complaint against him (Code Civ. Proc., § 428.10, subd. (a)).[3]

[2]Code of Civil Procedure section 389, subdivision (c) provides that "A complaint or cross-complaint shall state the names, if known to the pleader, of any persons as described in paragraph (1) or (2) of subdivision (a) who are not joined, and the reasons why they are not joined."

[3]Code of Civil Procedure section 428.10, in pertinent part, provides: "A party against whom a cause of action has been asserted in a complaint or cross-complaint may file a cross-complaint setting forth either or both of the following:

"(a) Any cause of action he has against any of the parties who filed the complaint or cross-complaint against him."

█ We conclude that the presence of St. Paul Fire and Marine Insurance Company as a party is compelled under the provisions of Code of Civil Procedure section 389 and that the petitioner should be permitted to file its proposed cross-complaint for declaratory relief, offset and damages against the joined party plaintiff (Code Civ. Proc., § 428.10, subd. (a); 3 Witkin, Cal. Procedure (2d ed. 1975 Supp.) Pleading, § 1020B). In so holding, we do not foreclose the trial court, upon a proper motion, from determining whether the issues tendered by the cross-complaint shall be tried together with those raised by the complaint and the answer thereto or shall be severed (Code Civ. Proc., § 1048, subd. (b); Code Civ. Proc., § 428.10, Legislative Committee comment; *Roylance* v. *Doelger* (1962) 57 Cal.2d 255, 262 [19 Cal.Rptr. 7, 368 P.2d 535]).

Since subdivisions (a) and (b) of Code of Civil Procedure section 428.10 are completely independent provisions, and it is necessary only that the person seeking to file the cross-complaint come within the provisions of one of the subdivisions (Code Civ. Proc., § 428.10, Legislative Committee comment), we do not consider petitioner's alternative argument that leave to file the cross-complaint should have been permitted under subdivision (b).

Petitioner next contends that the court's order denying discovery was an abuse of its discretion. █ Preliminarily, we observe that the prerogative writ is not the favored method of reviewing discovery orders, and an aggrieved party seeking such review must clearly demonstrate an abuse of discretion where discovery is denied or a violation of a privilege where discovery is granted (*Sav-on Drugs* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309]; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170, fn. 11 [84 Cal.Rptr. 718, 465 P.2d 854]).

There is no doubt that the two documents requested by petitioner are relevant if, as petitioner alleges, they contain details on the manner in which the theft occurred or discuss weaknesses in the internal auditing procedures of plaintiff real party. As petitioner points out, plaintiff real party seeks to recover about half a million dollars from petitioner based upon allegations that petitioner negligently permitted the branch manager of plaintiff real party to deposit unauthorized checks into his personal account with petitioner and that petitioner negligently permitted him to make withdrawals therefrom. In its answer (second affirmative defense),

petitioner asserted that plaintiff real party negligently failed to supervise and control its branch manager and failed to utilize reasonable and proper auditing procedures which would have disclosed the embezzlement by Tom of its savers' funds, and petitioner argues that plaintiff real party's own lack of care is a defense under California Uniform Commercial Code sections 3406 and 4406.[4]

Evidence Code section 911 provides that "Except as otherwise provided by statute:. . . (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing." Plaintiff real party refused to produce the Coopers & Lybrand report on the ground that it was an attorney work product and not admissible under Evidence Code section 1151, and the report of plaintiff real party's special audit committee, entitled "Suggestions for Improvement to Our System of Internal Control," on the basis that it was subsequent remedial conduct not admissible under Evidence Code section 1151.

■ In support of its motion to compel production of documents and answers at deposition, petitioner presented evidence to the effect that (1) the Coopers & Lybrand report was requested by the board of directors of plaintiff real party on January 9, 1975, two days after discovery of the embezzlement by plaintiff real party's branch manager, (2) Coopers & Lybrand undertook the engagement by return letter of January 13, 1975, and (3) the report was provided to the board of directors on June 9, 1975, as reflected in a cover letter to the report. Thus, as petitioner points out, the report was commissioned not by an attorney but by the board of directors, some four months prior to the time the complaint was filed. A report which is not the product of the attorney or of his agents or employees is not an attorney work product, and an attorney "cannot, by retroactive adoption, convert the independent work of another, already performed, into his own" (*Wilson* v. *Superior Court* (1964) 226 Cal.App.2d 715, 724 [38 Cal.Rptr. 255]).

■ Nor does Evidence Code section 1151 provide support for plaintiff real party's refusal to produce documents or to answer questions

[4]Section 3406 of the California Uniform Commercial Code provides that "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

Section 4406 of the California Uniform Commercial Code sets forth the customer's duty to discover and report unauthorized signatures.

related thereto. Section 1151 provides that "When, after occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event." As will be noted, the section is a prohibition on the admissibility of evidence at *trial*. It does not purport to limit the scope of discovery (Code Civ. Proc., § 2016, subd. (b); *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 172; *Associated Brewers Distr. Co.* v. *Superior Court* (1967) 65 Cal.2d 583, 587 [55 Cal.Rptr. 772, 422 P.2d 332]; *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 391 [15 Cal.Rptr. 90, 364 P.2d 266]).

We conclude that the refusal of respondent court to compel production of the Coopers & Lybrand report and the document entitled "Suggestions for Improvement to Our System of Internal Control" and to permit questioning related thereto, was an abuse of discretion, which may effectively preclude petitioner from discovering evidence essential to the preparation of its defenses.

Let a writ of mandate issue as prayed for in the petition.

Kane, J., and Rouse, J., concurred.