[No. B130556. Second Dist., Div. Five. Nov. 4, 1999.]

MYLAN LABORATORIES INC., Plaintiff and Respondent, v.
TERRENCE SOON-SHIONG et al., Defendants;
PATRICK SOON-SHIONG et al., Movants and Appellants.

72

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, Joseph F. Coyne, Jr., and Jeffrey J. Parker for Movants and Appellants.

Loeb & Loeb, Peter S. Selvin; Sonnenschein, Nath & Rosenthal, Percy Anderson, Robert F. Scoular and Mark T. Hansen for Plaintiff and Respondent.

## OPINION

WEISMAN, J.*—Appellants Patrick Soon-Shiong and American Bioscience, Inc., appeal from: (1) an order denying their motion to intervene in the instant lawsuit previously filed by Mylan Laboratories Inc. v. Terrence Soon-Shiong, Gregory Soon-Shiong, VivoRx, Inc., and VivoRx Diabetes, Inc.; and (2) an order denying their motion for a preclusive order. The basis for the motion to intervene was to make appellants a party to the existing lawsuit (the lawsuit) in order to provide them with standing to assert a privilege and the work product doctrine with respect to a document being utilized in the lawsuit by plaintiff Mylan Laboratories Inc. (Mylan) and to allow them standing to seek a preclusive order preventing Mylan from using the document in any litigation. The preclusive order was sought on the basis that the confidential document was allegedly obtained by an agent of Mylan's who improperly entered appellant Patrick Soon-Shiong's private office and "stole" the document from his private and secure location. The superior court denied without explanation the motion to intervene and the motion for a preclusive order.

Appellants contend that the court erred when it denied their motion to intervene and their motion for a preclusive order. They contend that the document in question was privileged under the attorney-client privilege and also under the attorney work product doctrine and they should have been allowed to intervene as a party to assert these arguments. They also contend that the court should have issued a preclusive order based on Mylan's "improper search" of appellants' office that led to discovery of the document, and they argue that "the lower court's rulings condone Mylan's improper conduct in obtaining the privileged memorandum . . . ."

We find that the superior court acted properly when it denied the motion to intervene and the accompanying motion for a preclusive order based on misconduct, since appellants had no interest in the lawsuit that justified intervention as a party, and because only a party can obtain a preclusive order based on misconduct. We further find, however, that appellants had standing to assert a privilege to prevent disclosure of allegedly confidential attorney-client communications based solely on their claimed status as a

---

*Judge of the Municipal Court for the Los Angeles Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

holder of a privilege and that they did not have to intervene as a party in order to assert any claim of privilege.

We therefore affirm the ruling of the superior court denying intervention and a preclusive order, and remand the matter to the superior court with directions to treat the motion to intervene as a motion of a claimed holder of a privilege to assert the privilege to prevent disclosure by a party to the lawsuit (Mylan) of alleged confidential communications between an attorney and a client. If their claim of privilege is determined to be valid, the court can fashion an order to protect the privilege and to prevent disclosure, but that is based on the court's power relating to privilege and not based on any misconduct of the parties. The work product doctrine can be asserted by the attorney involved if he chooses to appear in superior court to personally assert that doctrine, but that is his choice. If the attorney chooses not to appear, the superior court can determine if the work product doctrine can be asserted by appellants in the absence of the attorney under the facts of the case at that time. We also order that the superior court state reasons for any rulings it makes with respect to any issues of privilege or work product that may arise at the hearing concerning any documents in the lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Corporate Structure and Relationships

VivoRx, Inc., was formed in 1991 by defendant, Terrence Soon-Shiong (Terrence), and his brother, Patrick Soon-Shiong (Patrick). In 1994, plaintiff, Mylan, purchased common stock giving it a 10 percent share in VivoRx, Inc., for approximately $5 million, which interest has been reduced over time to 8.9 percent of the common stock of VivoRx, Inc. Mylan later paid approximately $15 million for all of the preferred stock of VivoRx, Inc., which may be converted into another 8.9 percent of the common stock of VivoRx, Inc. Terrence is a beneficiary of a trust owning 64 percent of the common stock of VivoRx, Inc. Patrick is a beneficiary of a trust controlling 14 percent of the common stock of VivoRx, Inc. Three other entities have invested approximately $6 million to purchase minority interests in VivoRx, Inc. The three-person board of directors of VivoRx, Inc., was made up of Terrence, Patrick and a representative of Mylan, with Patrick serving as chief executive officer and chairman of the board. Mylan's investment in VivoRx, Inc. was for the purpose of marketing a diabetes treatment VivoRx, Inc. was to develop. VivoRx Diabetes, Inc., is a wholly owned subsidiary of VivoRx, Inc. VivoRx Diabetes, Inc., was to do the research and development of the new diabetes treatment.

*Allegations of Misconduct by Patrick Surface*

In May 1998, Mylan became concerned about allegations of misappropriations by Patrick of funds and assets of VivoRx, Inc., and VivoRx Diabetes, Inc., for his own personal use and for other companies he owned (American Bioscience, Inc., and American Pharmaceutical Partners, Inc.). Mylan presented its concerns about Patrick to Terrence. On June 29, 1998, a joint operating agreement was entered into between Mylan and VivoRx, Inc., to deal with the alleged misconduct of Patrick and to ensure no similar misconduct occurred. On that same date, a special board of directors meeting was held involving VivoRx, Inc., and VivoRx Diabetes, Inc. As a result of the meeting, Patrick was removed as a director of the companies. Defendant Gregory Soon-Shiong (Gregory), another brother of Patrick and Terrence's, replaced Patrick on the board of directors. A case was filed in superior court by VivoRx, Inc., and VivoRx Diabetes, Inc., against Patrick and his affiliated companies.

Terrence met with Patrick to discuss the allegations of Patrick's misconduct, and found his explanations for the alleged misconduct to be plausible. The board of VivoRx, Inc., and VivoRx Diabetes, Inc., now controlled by Terrence and Gregory, agreed to dismiss the pending superior court case against Patrick without prejudice, subject to further investigation of the allegations.

*The Instant Lawsuit*

Mylan strongly disagreed with the decision to dismiss the pending superior court case against Patrick. Relations deteriorated between Mylan and VivoRx, Inc., with Mylan electing not to participate in the investigation of Patrick as authorized by the board of directors. Mylan filed the instant lawsuit on behalf of VivoRx, Inc., and VivoRx Diabetes, Inc., on July 27, 1998, containing numerous causes of action, including an allegation of breach of fiduciary duty against Terrence and Gregory, and seeking: (1) removal of Terrence and Gregory as directors of the companies; (2) appointment of a receiver for the companies; (3) involuntary dissolution of the companies; (4) a constructive trust for the companies; (5) an accounting; and (6) injunctive relief.

*The Obtaining and Use of the Allegedly Privileged Document*

The allegations in the instant lawsuit claim that on June 29, 1998, following the special meeting of the board of directors of the companies, Patrick went to the offices of VivoRx, Inc., and VivoRx, Diabetes, Inc.,

which were also used by Patrick as the offices for his own affiliated companies (American Bioscience, Inc., and American Pharmaceutical Partners, Inc.), and entered into an opened, unlocked file room where files of all of the companies were commingled. Patrick allegedly took documents and threw them onto the floor of the file room in an attempt to prevent recreation of the files. Patrick then left the file room abandoning the files he had thrown on the floor. After June 29, 1998, and before July 1, 1998, Heather Kirby, who was manager of special projects for Mylan and an assistant to the owner of Mylan, Milan Puskar (who was Mylan's representative on the board of directors of VivoRx, Inc.), entered the open file room in the offices of VivoRx, Inc., and observed a memorandum written by Charles Farman to Patrick that was dated October 9, 1997 (the Farman memo). Ms. Kirby claims she had a right to be in that location as an assistant to a member of the board of directors and was examining records of the company that had been thrown on the floor by Patrick. The author of the Farman memo was Charles Farman, an attorney who at one time represented VivoRx, Inc., and VivoRx Diabetes, Inc., when he was with Paul, Hastings, Janofsky and Walker, and who subsequently left that firm and then acted as corporate counsel to American Bioscience, Inc., and American Pharmaceutical Partners, Inc., the companies wholly owned by Patrick.

Mylan claims that the Farman memo involves personal advice of a business nature given to Patrick personally and argues that Patrick is not personally a client of Mr. Farman since his client is the corporation. Mylan further claims that the Farman memo is also evidence of a fraud or crime. Additionally, Mylan claims that the Farman memo was disclosed by Patrick voluntarily when he threw it on the floor of the open file room in the office of VivoRx, Inc., and then left.

Patrick claims in his motion to intervene that the Farman memo contains confidential communications between an attorney and client and is privileged. He claims it was sent to him in his capacity as an officer of the corporation and he states in a declaration that he left it in his private and secure office intending it to remain confidential. He claims that Ms. Kirby improperly entered his office and "stole" the document.

The Farman memo was attached to the complaint filed by Mylan in the instant lawsuit as an exhibit. Patrick was not a named party to the instant lawsuit since it was brought against Terrence and Gregory for breach of their fiduciary duties in dismissing the previous lawsuit that had been filed against Patrick.

*The Motion to Intervene and the Motion for a Preclusive Order*

Patrick filed a motion to intervene as a party in the instant lawsuit on the grounds that he had an interest relating to the matter in litigation and that the disposition of the case would impair his ability to protect that interest. He specifically claimed in his motion that the interest was solely in the confidentiality of the Farman memo and he sought intervention because "[i]ntervention is the only means by which Intervenors can gain the proper standing to protect the privileged Document from being utilized in this particular action." At the hearing on the motion, Patrick's attorney expressly stated to the court that the motion for intervention "is solely to intervene for the purpose of retrieving a privileged document."

Patrick also sought a preclusive order pursuant to *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272, 287-288 [245 Cal.Rptr. 873], prohibiting use of the document in the litigation because of the "abuse of the [court's] process" and "overreaching" by Mylan relating to the obtaining and use of the document. Since such a preclusive order is only available to a party to an action, Patrick's attorney at the hearing on the motion for the preclusive order conceded that the court was correct when it noted that the motion for a preclusive order "presumes that [the] motion to intervene was granted."

The court issued a written order denying the motion to intervene and the accompanying motion for a preclusive order. The court stated no reasons for the denial of the motions.

DISCUSSION

*The Denial of the Motion to Intervene*

The right to intervene in an action or proceeding of another is set forth in Code of Civil Procedure section 387, which states "intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons . . . ." According to that section, an intervenor either joins the plaintiff or unites with the defendant or demands something adverse to both the plaintiff and defendant. (Code Civ. Proc., § 387, subd. (a).)

The right to intervention may be permissive or unconditional. It is permissive when a person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both of the parties. (Code Civ. Proc., § 387, subd. (a).) It is unconditional when the person

seeking intervention claims an interest relating to the property or transaction that is the subject of the action, the disposition of the action may impair or impede the person's ability to protect that interest, and the interest is not being adequately represented by existing parties. (Code Civ. Proc., § 387, subd. (b).)

In the instant case, appellants contend on appeal that they had an unconditional right to intervene under Code of Civil Procedure 387, subdivision (b). They argue that they have a sufficient interest in the action, that disposition of the action will impair their interest, that their interest was not adequately represented by the existing parties, and that their application for intervention was timely. They claim on appeal that their interest in the action is in preserving the confidentiality of the Farman memo, which they characterize in their opening brief as "an item of personal property" that is protected by the attorney-client privilege and the work product doctrine. They also claim that their interest in the confidentiality of this document is not being adequately represented by the parties to the action.

In their points and authorities filed in support of the motion to intervene in the superior court, appellants claimed that, "Intervention is the only means by which Intervenors can gain the proper standing to protect the privileged Document from being utilized in this particular action." At the hearing in superior court on the motion to intervene, appellants attorney specified that "Patrick and American Bioscience's intervention is solely to intervene for the purpose of retrieving a privileged document."

It is thus clear that the motion to intervene as a party in the instant lawsuit was for the sole purpose of being able to have standing to assert a privilege relating to the Farman memo. The issue squarely presented to this court is whether this interest in preserving a privilege is the type of interest that requires intervention as a party or whether the Evidence Code envisions that privileges can be asserted by nonparties without the cumbersome and expensive process of intervention, with its procedural requirements that intervention as a party be made by filing an actual complaint with the attendant duty placed on the existing defendants to demur or plead to the complaint in the same manner as to the original complaint. (Code Civ. Proc., § 387, subd. (a).)

We note first that the type of interest contemplated by the right of unconditional intervention set forth in Code of Civil Procedure section 387, subdivision (b) is "an interest relating to the property or transaction which is the subject of the action . . . ." The Farman memo may be evidence in the

lawsuit, depending on the rulings the superior court makes with respect to the privilege issues, but it is not "the subject of the action" as required by subdivision (b) of section 387 of the Code of Civil Procedure. The subject of the action is the alleged breach of fiduciary duty by Terrence and Gregory, and this cause of action in tort does not qualify as property within the context of unconditional intervention. (*California Physicians' Service* v. *Superior Court* (1980) 102 Cal.App.3d 91, 95-99 [162 Cal.Rptr. 266] [cause of action in tort that is basis for litigation does not qualify as property for purposes of mandatory or unconditional intervention].) We therefore find that the argument by appellants that their claim of privilege relating to the Farman memo constitutes "an interest relating to the property or transaction which is the subject of the action" within the meaning of subdivision (b) of section 387 of the Code of Civil Procedure is not well taken and that their interest in preserving the confidentiality of the document is not a sufficient interest to obtain unconditional or mandatory intervention as an actual party. We conclude that the superior court acted properly when it denied the motion to intervene by appellants that was based on appellants desire to preserve the confidentiality of the Farman memo.[1]

There are sound policy reasons supporting our ruling that the mere fact that the Farman memo may be viewed as personal property for some purposes does not mean it constitutes "property" as that term is used in the intervention context. To hold otherwise would allow any person with an interest in personal property that was to be used as evidence to utilize unconditional intervention and become an actual party to a lawsuit if the evidence was embarrassing or could adversely impact or impair their business. Thus, persons who were not parties to lawsuits who wanted to prevent or limit the use of their personal letters or business records could seek intervention to try to limit the use of such evidence, even if no privilege existed, based solely on their ownership interest in the potential evidence and the impact on them that could result from such use.

---

[1]Both appellants and respondents assume that in denying the motion to intervene without stating any reasons the superior court also ruled on and resolved all the issues relating to the alleged privileged status of the Farman memo. We do not read the ruling of the superior court as encompassing the issues of privilege, especially in light of the remarks the superior court made with respect to the motion for a preclusive order, where it stated that such a motion would only be considered if the motion to intervene was granted and appellants were made actual parties to the lawsuit. It appears that the superior court was taking a step-by-step approach and viewed the motion to intervene simply as a motion to intervene and not as an actual assertion of any privilege. Since we find in this opinion that appellants have standing to assert the attorney-client privilege relating to the Farman memo without intervening as a party simply because of their claimed status as a holder of the privilege, they may raise all issues relating to the claimed privilege when this matter is remanded to the superior court for further proceedings.

If such intervention were allowed it would have to occur at the time it became known that privileged information was going to be disclosed or used as evidence. This could even be in the middle of testimony during the course of a trial. The trial, or at least the portion dealing with the evidence or disclosure, would have to be halted while the motion to intervene was heard, and, if the motion was granted, the trial would have to be delayed while the intervenor filed a complaint in intervention and the time periods within which to answer or demur to the new complaint would delay the proceedings even further. We find that intervention as a party was not intended to be used as a means by which a nonparty can assert the attorney-client privilege.

This conclusion is based not only on sound policy considerations but also on the express language of Evidence Code section 954, which defines the attorney-client privilege, defines the holder of the privilege, and describes who can claim the privilege. Evidence Code section 954 provides, in part, that "the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." Thus, by its own terms, Evidence Code section 954 states that the client has the privilege and can prevent disclosure of confidential communications between a lawyer and client whether or not the client is a party to the lawsuit. Clearly, the Evidence Code did not anticipate that the client would have to intervene and become a party as a prerequisite to asserting this privilege. On the contrary, it expressly provided that the privilege could be claimed by a nonparty as long as the nonparty asserting the privilege was the client or other authorized person.

We find that the holder of the attorney-client privilege has standing to assert the privilege in a proceeding to prevent disclosure simply by virtue of the fact that he or she is the holder of the privilege, and that there is no need to intervene to become an actual party to the lawsuit in order to be able to assert the privilege. Having found that the superior court acted properly in denying the motion to intervene, we will remand this matter to the superior court for further proceedings. Since we have also found that intervention is unnecessary when a person who claims to be the holder of the attorney-client privilege seeks to assert the privilege, we anticipate that on remand appellants will once again seek to assert this privilege. The issues relating to the claimed privilege have already been briefed in the motion to intervene and the response to that motion. To prevent further delay in this matter, we direct the superior court to treat the previously filed motion to intervene as a motion to assert the attorney-client privilege and to proceed to conduct a hearing relating to the claimed privilege. ■■■■ We also instruct the

superior court to state reasons for any rulings it makes with respect to any issues of privilege or work product doctrine that may arise at the hearing.[2]

*The Denial of the Motion for a Preclusive Order*

■ Appellants also contend that the superior court erred when it denied their request for a preclusive order that would have required sealing and return of the Farman memo and would have precluded use of the Farman memo in litigation. Appellants argued that such an order was appropriate under the reasoning of *Peat, Marwick, Mitchell & Co.* v. *Superior Court, supra,* 200 Cal.App.3d at pages 287-288, which held that courts have inherent power to curb abuses and promote fair process in litigation and can preclude evidence to insure that all parties receive a fair trial. Appellants contend that they were entitled to such a preclusive order relating to the Farman memo because it was obtained through an improper search of appellants' private and secure office that was performed in violation of a stipulation concerning a special master that was entered into by the parties in the previous lawsuit involving VivoRx, Inc., and Patrick. Such preclusive orders are really a sanction or remedy obtained by a party to a lawsuit to prevent abuse or overreaching by another party, and are a less severe sanction than dismissal. (*Ibid.*)

The superior court recognized at the hearing on the request for a preclusive order that the request was conditioned on the court's granting of appellants' motion to intervene, since only a party to the lawsuit could seek a preclusive order under the reasoning of *Peat, Marwick.* The superior court specifically asked the attorney for appellants whether, "the motion for preclusive order presumes the granting of the motion to intervene[?]" and

---

[2]The holder of the protection from disclosure granted by the work product doctrine is the attorney. (*Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 278 [218 Cal.Rptr. 205].) If the attorney is absent, the client can assert the work product on behalf of the attorney. (*Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 64-65 [166 Cal.Rptr. 274].) We leave to the superior court the resolution of issues relating to the work product doctrine, including whether the attorney must be personally present to assert the doctrine when he is aware of the proceeding, whether the client can assert the doctrine if the attorney decides not to assert the doctrine after receiving notice of the hearing date, whether the client can assert the doctrine if properly authorized by the attorney, and whether such express authorization exists in the instant situation. Also, the superior court may have to determine if the prior representation of VivoRx, Inc., and VivoRx Diabetes, Inc., by Attorney Charles Farman, the author of the Farman memo, has any legal significance on his ability to assert the work product doctrine relating to the document at issue that was allegedly prepared for appellants American Bioscience, Inc., and Patrick. (See *Metro-Goldwyn-Mayer, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 242, 249 [30 Cal.Rptr.2d 371] [discussing effect of former representation of client on ability to assert work product doctrine in subsequent litigation where former client and new client are on opposing sides].)

the response was, "Yes, it does, your Honor." To clarify the situation, the court again asked, "[T]hat motion [the motion for preclusive order] presumes that your motion to intervene was granted?" The attorney for appellants again responded that, "You're right, it does presume that."

It is clear that once the superior court denied the motion to intervene it had to deny the accompanying motion for a preclusive order, since only a party could seek such an order as a sanction for abuse or overreaching. Because we have upheld the ruling of the superior court denying the motion to intervene we also uphold the decision of the superior court to deny the motion for a preclusive order. A preclusive order such as the one sought in the instant case is only attainable by one party against another and is designed to provide a fair trial between the parties.

This does not mean that appellants may not ultimately be able to obtain a court order prohibiting use of the allegedly privileged Farman memo. If appellants successfully assert a privilege relating to the Farman memo, the court has power to prevent disclosure or use of the memo, but this is based on its power relating to protection of a privilege and not on any misconduct or abuse by a party.

## DISPOSITION

The order denying intervention and the order denying a preclusive order are affirmed. The matter is remanded to the superior court with directions to treat the motion to intervene as a motion to assert a privilege and to conduct a hearing on any contested issues related to privilege that it deems necessary to decide. The superior court is similarly directed to decide issues relating to the work product doctrine, including whether or not it has been properly asserted in the superior court. The superior court is also directed to state reasons for any rulings it makes with respect to any issues of privilege and work product. Costs on appeal are awarded to respondent Mylan.

Turner, P. J., and Godoy Perez, J., concurred.