[No. G034361. Fourth Dist., Div. Three. June 21, 2005.]

DOUGLAS M. HODGE et al., Plaintiffs and Respondents, v.
KIRKPATRICK DEVELOPMENT, INC., et al., Defendants and
Respondents;
STATE FARM GENERAL INSURANCE COMPANY, Movant and
Appellant.

## COUNSEL

Luce, Forward, Hamilton & Scripps, Charles A. Bird, Charles A. Danaher and Peter H. Klee for Movant and Appellant.

Irell & Manella, Richard J. McNeil and Mark S. Afrasiabi for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

## OPINION

**FYBEL, J.—**

### I. INTRODUCTION

Did the trial court err in denying the motion of State Farm General Insurance Company (State Farm) for leave to intervene in a construction defect lawsuit brought by State Farm's insureds, Douglas M. Hodge and Kylie Schuyler Hodge (the Hodges), against third party tortfeasors? State Farm obtained partial subrogation rights against the third parties by paying a portion of the Hodges'· claims for property damage to their house. We hold State Farm has a statutory right to intervene under Code of Civil Procedure section 387, subdivision (b) and therefore reverse.

## II. Facts and Proceedings in the Trial Court

State Farm issued the Hodges a homeowners insurance policy (the Policy) covering certain risks to their house in Laguna Beach. The Policy grants State Farm subrogation rights against third parties who cause losses for which the Policy provides benefits. The subrogation paragraph in the Policy's conditions states, in part: "An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us."

In December 2002, the Hodges submitted a claim to State Farm under the Policy for water and mold damage to their house allegedly caused by the negligence of third parties. The Hodges contended the cost to repair the water damage was about $685,000. The Hodges made a total demand on State Farm for water and mold damage in the policy limits amount of $1,699,680. State Farm denied the Hodges' claim for mold damage and paid the Hodges about $150,000 on the claim for water damage. State Farm contended it is still adjusting the water damage claim.

In September 2003, the Hodges filed a construction defect lawsuit, Orange County Superior Court case No. 03CC00428 (the construction defect lawsuit), against the former owner, the developer, the general contractor, and one subcontractor who constructed the Hodges' house. The complaint in the construction defect lawsuit alleged defendants caused the water and mold damage by performing defective work, violating building codes, failing to comply with plans and specifications, using unauthorized or unqualified subcontractors, failing to repair defective work, conducting inadequate repair work, and negligently supervising construction of the house.[1]

In November 2003, the Hodges filed a complaint for bad faith against State Farm, Orange County Superior Court case No. 03CC13890 (the bad faith lawsuit). The complaint in the bad faith lawsuit alleged water infiltration caused a covered loss to the Hodges' house and that State Farm in bad faith denied coverage under the Policy and refused to pay the Policy benefits. The trial court denied State Farm's motion to consolidate the construction defect lawsuit and the bad faith lawsuit.

State Farm moved for leave to intervene in the construction defect lawsuit to file a subrogation complaint. The Hodges, as well as three of the four

---

[1] Attached to the respondents' brief is a document from the construction defect lawsuit entitled "Plaintiffs' Preliminary Defect List" purporting to list the construction defects in the Hodges' house. We decline to consider the preliminary defect list because it is not part of the record on appeal and attaching the list to the respondents' brief violates rule 14(d) of the California Rules of Court.

defendants in the construction defect lawsuit, opposed State Farm's motion. One defendant (RESG, Inc.) filed nothing in response to State Farm's motion.

At the hearing on State Farm's motion for leave to intervene, the trial court announced a tentative ruling to deny the motion because "the diversion or complication of adding State Farm would outweigh any prejudice to State Farm by not allowing an intervention." On August 5, 2004, the trial court issued a minute order denying State Farm's motion for leave to intervene "for reasons as stated on the record."

■ State Farm timely appealed from the order denying its motion for leave to intervene. An order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action. (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1363 [104 Cal.Rptr.2d 183].)

III. As a Partially Subrogated Insurer, State Farm Has a
Right to Intervene in the Insureds' Lawsuit Under
Code of Civil Procedure Section 387, Subdivison (b)

■ Intervention is governed by Code of Civil Procedure section 387. Subdivision (a) of section 387 states in relevant part, "[u]pon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding."

Intervention is mandatory (as of right) or permissive. A nonparty has a right under Code of Civil Procedure section 387, subdivision (b) to intervene in a pending action "if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties."[2]

---

[2] The trial court has discretion under Code of Civil Procedure section 387, subdivision (a) to permit a nonparty to intervene if: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 [100 Cal.Rptr.2d 807]; *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346 [70 Cal.Rptr.2d 255].)

### A. THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER CODE OF CIVIL PROCEDURE SECTION 387, SUBDIVISION (b)

#### 1. *Interest Related to the Property or Transaction That is the Subject of the Underlying Lawsuit*

■ State Farm, as a partially subrogated insurer, has an interest "relating to the property or transaction" that is the subject of the construction defect lawsuit. Under the doctrine of subrogation, when an insurer pays money to its insured for a loss caused by a third party, the insurer succeeds to its insured's rights against the third party in the amount the insurer paid. (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 633–634 [119 Cal.Rptr. 449, 532 P.2d 97].) Upon subrogation, the insurer steps into the shoes of its insured. (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908 [92 Cal.Rptr.2d 151] (*Mel Rapton*).) " 'Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer.' " (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104 [102 Cal.Rptr.2d 36] (*Plut*).) Partial payment to the insured results in partial subrogation; the insurer is subrogated in the amount of the insurance proceeds. (*Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 43 [162 Cal.Rptr. 238] (*Ferraro*).)

*Deutschmann v. Sears, Roebuck & Co.* (1982) 132 Cal.App.3d 912 [183 Cal.Rptr. 573] (*Deutschmann*) supports the position that State Farm has an interest in the litigation sufficient to support intervention as a matter of right. In that case, the insured sued the retailer Sears, Roebuck & Company for personal injury and property damages resulting from a fire caused by a defective television set. (*Id.* at p. 914.) The insurer became subrogated to the insured by paying policy proceeds for property damage and intervened in the insured's lawsuit. (*Ibid.*) The trial court dismissed the action, including the insurer's complaint in intervention, on the ground the insured had failed to file the proof of service of summons in a timely manner. (*Id.* at pp. 914–915.)

■ The Court of Appeal reversed. The court held dismissal of the insurer's intervention complaint was erroneous because the insurer, having timely intervened, was entitled to proceed with the lawsuit notwithstanding the insured's failure to timely file the proof of service of summons. (*Deutschmann, supra,* 132 Cal.App.3d at p. 915.) The court stated that to intervene under Code of Civil Procedure section 387, the proposed intervener must have a direct interest in the success of one of the parties to the litigation or an interest against both of them. (*Deutschmann, supra,* at p. 915.) "It is

clear under the facts of this case," the court concluded, "that [the insurer] has a direct pecuniary interest in the outcome of the litigation between plaintiff and respondent." (*Ibid.*) The insurer was subrogated to the rights of the insured in the amount the insurer had paid the insured for the loss suffered, and "[a]s such subrogee, [the insurer] may intervene in a pending action for damages brought by the insured." (*Ibid.*)

While *Deutschmann* does not state whether such intervention would be permissive or as of right, the case supports the proposition a subrogated insurer has an interest related to the transaction that is the subject of the underlying lawsuit. Indeed, the *Deutschmann* court recognized a subrogated insurer has "a direct pecuniary interest" in the outcome of the litigation between the insured and the responsible third party. (*Deutschmann, supra,* 132 Cal.App.3d at p. 915.)

Relying on *California Physicians' Service v. Superior Court* (1980) 102 Cal.App.3d 91 [162 Cal.Rptr. 266] (*California Physicians' Service*), the Hodges contend subrogation does not give the insurer an interest in the property or transaction that is the subject of the lawsuit in which intervention is sought. We disagree. In *California Physicians' Service*, the trial court denied the motion of a health insurer to intervene in its insured's medical malpractice action. The appellate court denied the insurer's petition for writ of mandate, stating "[a] cause of action in tort would not qualify as 'property'" under Code of Civil Procedure section 387. (*California Physicians' Service, supra,* at p. 96.) The insurer's lack of subrogation rights was due to a provision of the Civil Code applicable to medical malpractice actions. (102 Cal.App.3d at p. 94 & fn. 2; Civ. Code, § 3333.1, subd. (b).) Because the insurer lacked a right of subrogation, its interest in the case was merely that of a creditor under the insurance contract and under a settlement agreement reached with the plaintiff. (*California Physicians' Service, supra,* 102 Cal.App.3d at pp. 93–95.)

In *Mylan Laboratories Inc. v. Soon-Shiong* (1999) 76 Cal.App.4th 71, 79 [90 Cal.Rptr.2d 111] (*Mylan Laboratories*), the court cited *California Physicians' Service* for the proposition a tort cause of action does not qualify as property for purposes of intervention. *Mylan Laboratories* did not concern the intervention rights of a subrogated insurer. The issue in *Mylan Laboratories* was whether a nonparty's desire to preserve the confidentiality of a memorandum and assert privileges qualified as an interest supporting intervention. (*Id.* at p. 78.) The court held the memorandum did not constitute " 'property . . . which is the subject of the action' " under Code of Civil Procedure section 387. (*Mylan Laboratories, supra,* at p. 79.)

Here, in contrast to *California Physicians' Service* and *Mylan Laboratories*, State Farm has subrogation rights by operation of law and under the terms of the Policy. State Farm is not merely a creditor; rather, State Farm has stepped into the Hodges' shoes and, to the extent it has made payments under the Policy, has the same rights as the Hodges against the various defendants and tortfeasors in the construction defect lawsuit. As an insurance carrier with a right of partial subrogation, State Farm has a direct pecuniary interest in the Hodges' action against the allegedly responsible third parties.

### 2. Disposition of the Action May as a Practical Matter Impair or Impede Ability to Protect Interest

Is State Farm so situated that the disposition of the construction defect lawsuit may "as a practical matter impair or impede" State Farm's ability to protect its subrogation rights within the meaning of Code of Civil Procedure section 387, subdivision (b)? Yes.

It is the insurer's duty to protect subrogation rights. (*Mel Rapton, supra,* 77 Cal.App.4th at pp. 913, 914.) It is generally acknowledged the insurer's safest course to protect those rights is to seek intervention in the insured's lawsuit against the legally responsible third party. (*Plut, supra,* 85 Cal.App.4th 98, 104, citing 3 Cal. Insurance Law and Practice (rev. ed. 1996) § 35.11[8][d], pp. 35–52.17 to 35–52.19.)

Intervention is the safest course because the other courses may, as a practical matter, "impair or impede" the insurer's ability to protect its subrogation rights. In theory, there are two possible alternatives to subrogation: (1) a separate lawsuit against the responsible third party, or (2) recoupment of payments directly out of the insured's recovery from the responsible third party. (*Plut, supra,* 85 Cal.App.4th at p. 104; *Mel Rapton, supra,* 77 Cal.App.4th at p. 908; *Ferraro, supra,* 102 Cal.App.3d at pp. 42–43.) Thus, "[w]here a subrogation provision exists, an insurer may recoup its payments directly from the tortfeasor or from the proceeds of the insured's action against a tortfeasor." (*Pacific Gas & Electric Co. v. Superior Court* (1994) 28 Cal.App.4th 174, 183 [33 Cal.Rptr.2d 522].) Or, in a partial subrogation, "[t]he insured retains the right to sue the responsible party for any loss not fully compensated by insurance, and the insurer has the right to sue the responsible party for the insurer's loss in paying on the insurance policy." (*Mel Rapton, supra,* 77 Cal.App.4th at p. 908.)

■ Both alternatives are, in practice, inadequate or inconsistent with the purpose of intervention. The first alternative—bringing a second lawsuit against the responsible third party—impairs or impedes the insurer's ability to protect subrogation rights because the responsible third party can defeat the subrogated insurer's lawsuit by asserting the defense of splitting a cause of action.[3] (*Mel Rapton, supra,* 77 Cal.App.4th at p. 908.) The rule against splitting a single cause of action prohibits a plaintiff from turning a single cause of action into the basis of several suits. (*Id.* at p. 907; *Ferraro, supra,* 102 Cal.App.3d at p. 41.) A single cause of action arises when a single tortious act causes several items of property damage, while two causes of action arise when a single tortious act causes the plaintiff to suffer both personal injury and property damage.[4] (*Mel Rapton, supra,* 77 Cal.App.4th at p. 909.)

When, as here, the insurer partially compensates the insured for the loss, thereby becoming partially subrogated, the subrogation doctrine "results in two or more parties having a right of action for recovery of damages based upon the same underlying cause of action." (*Ferraro, supra,* 102 Cal.App.3d at p. 41; see also *Mel Rapton, supra,* 77 Cal.App.4th at p. 908.) The insured can sue the responsible party for any loss not fully compensated by insurance, and the insurer can sue the responsible party for the insurer's loss in the amount paid on the insurance policy. (*Mel Rapton, supra,* 77 Cal.App.4th at p. 908.)

The Hodges' complaint alleges a single cause of action for property damage to their house. The construction defect lawsuit defendants therefore could defeat a separate lawsuit by State Farm with a plea in abatement asserting State Farm is splitting a cause of action. In that event, State Farm,

---

[3] The Hodges argue State Farm waived arguments based on splitting a cause of action and res judicata because it did not raise them in the trial court. State Farm did not specifically argue that filing a second lawsuit to enforce its subrogation rights would violate the rule against splitting a cause of action. But State Farm did argue it could lose its subrogation rights if the court did not permit State Farm to intervene. If State Farm failed to raise arguments based on splitting a cause of action and res judicata, the facts germane to those arguments are essentially undisputed, and so we exercise our discretion to resolve them as a matter of law. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Raphael v. Bloomfield* (2003) 113 Cal.App.4th 617, 621 [6 Cal.Rptr.3d 583].)

[4] "Thus, some jurisdictions have found there is no impermissible splitting of a cause of action where an insurer brings an action to recover the amount it paid the insured for property damage and the insured brings a separate action for personal injuries." (*Mel Rapton, supra,* 77 Cal.App.4th at p. 909.) State Farm paid the Hodges for property damage, and their complaint alleges only property damage.

unable to intervene in the construction defect lawsuit, would be left with the second alternative of suing its own insureds. As explained below, that option is not practical.

The Hodges assert filing a second lawsuit is a viable option for State Farm because the construction defect lawsuit defendants waived the defense of splitting a cause of action by opposing State Farm's motion for leave to intervene. A defendant may waive the defense of splitting a cause of action; "[h]owever, a waiver generally arises when the tortfeasor has been sued in two actions and could have avoided the multiplicity of actions by bringing a plea in abatement in response to the *second action* while the first action was pending." (*Mel Rapton, supra,* 77 Cal.App.4th at p. 910; see also *Ferraro, supra,* 102 Cal.App.3d at pp. 43–44 ["[t]he defense that a plaintiff has split a cause of action is an affirmative defense, which must be pleaded by a defendant in abatement"].) It is not certain the actions construction defect lawsuit defendants in the insured's lawsuit would necessarily be found to constitute a waiver of a defense in a second, yet unfiled, lawsuit by State Farm. One of the four defendants (RESG, Inc.) filed nothing in response to State Farm's motion.

Waiver is an intensely factual determination. (*Plut, supra,* 85 Cal.App.4th at p. 110.) The trial court in this case made no finding, express or implied, of waiver. As an appellate court, we decline to do so.

■ A subrogated insurer's right to intervene should not depend on a predetermination whether the defense of splitting a cause of action will succeed; it is enough the defense is available in a second lawsuit and may, in the statute's words, "as a practical matter impair or impede" (Code Civ. Proc., § 387, subd. (b)) the subrogated insurer's ability to protect its rights. Denying the subrogated insurer the right to intervene because of the mere possibility the responsible third party might withhold or waive the defense of splitting a cause of action in a second lawsuit would give that third party the ability to force the insureds and the insurers to pursue their claims through two separate lawsuits. That result would defeat "[t]he legislative purpose of Code of Civil Procedure section 387, to reduce the burden on our already over-crowded dockets." (*Deutschmann, supra,* 132 Cal.App.3d at p. 917.)

The second alternative—recouping payments directly from the insured's recovery—also would, as a practical matter, impair or impede the insurer's ability to protect its subrogation rights. This alternative might not be permissible: "Although there is little California case authority regarding the status of

an insurer's subrogation rights when the insurer foregoes participating in the underlying action, the weight of foreign case authority supports the proposition that, in some circumstances, an insurer may recover funds paid to the insured by a legally responsible third party, even though the insurer did not participate in the insured's legal action against the third party." (*Plut, supra,* 85 Cal.App.4th at p. 104, citing 16 Couch on Insurance (2d ed. 1983) § 61:47, p. 130, & 44 Am.Jur.2d (1982) Insurance, § 1820, p. 808.)

■ Assuming an insurer's nonparticipation in the insured's action does not, as a matter of law, preclude the insurer from recouping its payment to the insured from the insured's recovery (see *Plut, supra,* 85 Cal.App.4th at p. 111), that procedure, as a practical matter, would impair or impede State Farm's ability to protect its interest. "It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for [his or] her injuries, that is, has been made whole." (*Barnes v. Independent Auto. Dealers of California* (9th Cir. 1995) 64 F.3d 1389, 1394; see also *Sapiano v. Williamsburg Nat. Ins. Co.* (1994) 28 Cal.App.4th 533, 536 [33 Cal.Rptr.2d 659].) Thus, absent intervention, the insurer is to a large extent at the mercy of its insured's efforts and success in recovering from the responsible third party. As the *Deutschmann* court observed, "[i]t is true that the failure of the plaintiff to recover from a defendant would likewise deprive an intervener of the right to recover, since a decision on the merits would affect the rights of both plaintiff and intervener to collect from defendant." (*Deutschmann, supra,* 132 Cal.App.3d at p. 916.)

State Farm would not be able to assert its rights of recoupment against the Hodges until they fully recovered from the construction defect lawsuit defendants, and then only to the extent the Hodges recovered more than the amount of their uninsured loss. As explained below, the Hodges' interests are not necessarily aligned with State Farm's. The Hodges would have little incentive to invest time, effort, and fees pursuing defendants to recover for covered claims.

Granted, intervention is unnecessary to protect State Farm's subrogation rights from being destroyed by settlement of the construction defect lawsuit. The construction defect lawsuit defendants know of State Farm's subrogation rights by virtue of State Farm's motion for leave to intervene. Thus, a settlement between the Hodges and defendants would not bar State Farm's

recovery from defendants, unless State Farm consented to the settlement. (*Griffin v. Calistro* (1991) 229 Cal.App.3d 193, 195–196 [280 Cal.Rptr. 30].) Intervention would, however, be necessary to serve the legislative purpose of preventing multiple litigation. (*Deutschmann, supra,* 132 Cal.App.3d at p. 917.) Further, it makes no sense to conclude State Farm defeated its intervention rights by bringing the necessary motion for leave to intervene notifying the construction defect defendants of its subrogation rights.

■ Significantly, the standard under Code of Civil Procedure section 387, subdivision (b) is not whether, absent intervention, disposition of the action will *destroy* the putative intervener's interest in the property or transaction which is the subject of the underlying lawsuit. Rather, the standard is whether disposition of the action will *as a practical matter impair or impede* the intervener's *ability to protect* that interest. That standard is met in this case: Disposition of the construction defect lawsuit will as a practical matter *impair or impede* State Farm's ability to protect its subrogation rights. As a practical matter, neither a lawsuit against the construction defect lawsuit defendants nor a lawsuit for reimbursement against the Hodges is a viable means for State Farm to protect those rights.

### 3. *Interest Adequately Represented by Existing Parties*

Finally, State Farm's interests are not adequately represented by the existing parties to the construction defect lawsuit for two reasons. First, as explained above, State Farm cannot recoup its payment to the Hodges until the Hodges have been made whole from their recovery against defendants in the construction defect lawsuit. (*Plut, supra,* 85 Cal.App.4th at pp. 104–105 ["the insurer is entitled to subrogation only after the insured has recouped his loss *and* some or all of his litigation expenses incurred in the action against the tortfeasor"]; see also *Sapiano v. Williamsburg Nat. Ins. Co., supra,* 28 Cal.App.4th at p. 536; *Barnes v. Independent Auto. Dealers of California, supra,* 64 F.3d at p. 1394.) As a result, the Hodges have a disincentive to use their resources to seek damages beyond what is necessary to make themselves whole.

Second, and in a similar vein, the Hodges have an incentive to prove their losses resulted from mold damage caused by defendants' negligence and a disincentive to prove their losses resulted from water damage. State Farm denied the Hodges' claims for mold damage and paid part of the Hodges' claim for water damage. The Hodges' interest therefore is to establish their damages resulted from mold damage rather than water damage; State Farm's interest is to establish the Hodges' losses, to the extent of the insurance payment, were caused by water damage.

■ That is not to say the Hodges or their counsel would intentionally thwart State Farm's rights. The Policy requires the Hodges "do nothing after a loss to prejudice [State Farm's subrogation] rights," and if the Hodges breached that provision, State Farm could resort to an action against them for impairment of its subrogation rights. (*Mel Rapton, supra,* 77 Cal.App.4th at p. 913.) But the standard in deciding intervention is whether existing parties adequately represent the intervener's interest in the filed lawsuit, not whether the intervener has a remedy outside of intervention if the existing parties fail to adequately represent the intervener's rights. The Policy requirements reflect the recognition the Hodges and State Farm might have differing interests in the event of a loss, and indeed, the conflict between the Hodges' and State Farm's interests in the outcome of the construction defect lawsuit is palpable and real. State Farm's interests are not adequately represented by the Hodges because they have an incentive to advance their interests in the construction defect lawsuit at the expense of protecting State Farm's subrogation rights.

### B. Intervention as of Right Under Federal Law

■ Rule 24(a) of the Federal Rules of Civil Procedure (28 U.S.C.S.) establishes intervention as of right on virtually identical terms as Code of Civil Procedure section 387, subdivision (b). Rule 24(a) states: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Several federal cases have recognized a subrogated insurer has a right to intervene under rule 24(a)(2) to protect the insurer's subrogation rights. (*McDonald v. E. J. Lavino Co.* (5th Cir. 1970) 430 F.2d 1065, 1070–1071; *Black v. Texas Employers Ins. Assn.* (10th Cir. 1964) 326 F.2d 603, 604; see also *Cummings v. United States* (9th Cir. 1983) 704 F.2d 437 [trial court abused discretion in denying as untimely the subrogated insurer's application for intervention as of right]; *Public Service Co. v. Black & Veatch* (10th Cir. 1972) 467 F.2d 1143 [partially subrogated insurer that does not intervene is subject to compulsory joinder].)

When the Legislature adopts the substance of a non-California statute, the Legislature is presumed to have acted with knowledge and in light of decisions interpreting the adopted statute. (*Buckley v. Chadwick* (1955) 45 Cal.2d 183, 193 [288 P.2d 12].) Subdivision (b) of Code of Civil Procedure section 387 was adopted in 1977. (See Historical and Statutory Notes, 14 West's Ann. Code Civ. Proc. (2004 ed.) foll. § 387, p. 383.) Rule 24 of the

Federal Rules of Civil Procedure was adopted in 1938, and rule 24(a) was amended to its present form in 1966. (See Notes of Advisory Com. on Rules, History; Ancillary Laws and Directives, reprinted at U.S.C.S. Ct. Rules (1998 ed.) foll. Fed. Rules Civ. Proc., rule 24 (28 U.S.C.S.), p. 105 et seq.; 7C Wright et al., Federal Practice and Procedure (2d ed. 1986) § 1903.)

Subdivision (b) of Code of Civil Procedure section 387 is in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure; " '[t]herefore, the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts [citations].' " (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 384 [137 Cal.Rptr. 332].) Accordingly, the Legislature, in adopting subdivision (b) of Code of Civil Procedure section 387, intended it to be interpreted consistently with federal cases interpreting rule 24(a)(2) as giving a subrogated insurer a right to intervene in its insured's lawsuit against the responsible third party.

### C.   SIMILARITY TO COMPULSORY JOINDER OF INDISPENSABLE PARTIES UNDER CODE OF CIVIL PROCEDURE SECTION 389

■ The description of an indispensable party under the compulsory joinder statute is virtually identical to the description of a party who may intervene as of right. The California compulsory joinder statute, Code of Civil Procedure section 389, subdivision (a), states: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."[5]

The similarity in language between the intervention and compulsory joinder statutes supports the conclusion State Farm could intervene as of right in the construction defect lawsuit. In *Bank of Orient v. Superior Court* (1977) 67 Cal.App.3d 588 [136 Cal.Rptr. 741], the court held a partially subrogated insurer is an indispensable party and must be joined as a party plaintiff under

---

[5] The 1966 amendment to rule 24(a) of the Federal Rules of Civil Procedure drew upon the amendments made the same year to rule 19, dealing with joinder. (7C Wright et al., Federal Practice and Procedure, *supra,* § 1903.) The description in rule 24(a)(2) of those allowed to intervene as of right is nearly identical to the description in rule 19(a)(2)(i) of those whose joinder is compulsory. (*Ibid.*)

Code of Civil Procedure section 389. In that case, a manager of plaintiff savings and loan embezzled money from it and deposited the money in the defendant bank. (*Bank of Orient v. Superior Court, supra,* 67 Cal.App.3d at pp. 591–592.) The plaintiff was insured for the losses, and the insurer paid the plaintiff's claims in exchange for an assignment of rights. (*Id.* at p. 592.) The plaintiff sued the bank to recover the embezzled funds. (*Ibid.*) After discovery revealed the assignment to the insurer, the defendant bank moved to compel joinder of the insurer as a plaintiff. (*Ibid.*) The trial court denied the motion. (*Id.* at p. 593.) The Court of Appeal issued a writ of mandate and held the insurer, as a partial assignee and subrogee of the savings and loan, was an indispensable party whose joinder was compulsory under Code of Civil Procedure section 389, subdivision (a). (*Bank of Orient v. Superior Court, supra,* 67 Cal.App.3d at pp. 595–596.) "The objection to the omission of indispensable parties is so fundamental that it need not be raised by the parties themselves; the court may, of its own motion, dismiss the proceedings, or refuse to proceed, until indispensable parties are brought in [citations]." (*Id.* at p. 595.)

Compulsory joinder differs from intervention as of right in some respects. The compulsory joinder statute, unlike the mandatory intervention statute, does not require a showing the putative party's interests would not be adequately represented by existing parties. As in *Bank of Orient v. Superior Court*, compulsory joinder usually is invoked by the defendant for its own protection. But the underlying principle of *Bank of Orient*—that partial subrogees are indispensable parties—supports the proposition the indispensable partial subrogee may intervene as of right. Since a partial subrogee's rights are "so fundamental" that the court may refuse to proceed without joinder (*Bank of Orient v. Superior Court, supra,* 67 Cal.App.3d at p. 595), it follows the partial subrogee's rights are of such a nature as to give the subrogee the right to intervene.

D.   EXCEPTION FOR NOMINAL PAYMENT BY INSURER AS PRETEXT
FOR INTERVENTION

The Hodges argue permitting State Farm to intervene as of right would give an insurer the ability to interfere with its insured's lawsuit by paying a nominal sum on a policy claim to obtain intervention rights. State Farm so far has paid the Hodges about $150,000—less than the amount of the Hodges' claim, but not an insubstantial sum. Nothing we say in this opinion should preclude a trial court from concluding an insurer does not have a right to intervene based on a finding the insurer paid a nominal amount on a claim solely as a pretext to intervene in the insured's lawsuit.

## DISPOSITION

The order denying State Farm's motion for leave to intervene is reversed. The matter is remanded for further proceedings consistent with this opinion, including entry of an order granting State Farm leave to intervene. Appellant to recover costs incurred on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied September 28, 2005.