Filed 9/4/14  T.R. v. A.J. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| T.R.,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>A.J.,<br><br>    Respondent,<br><br>T.J.,<br><br>    Claimant and Appellant. | B247965<br><br>(Los Angeles County<br>Super. Ct. No. PF003745) |


APPEAL from an order of the Superior Court of Los Angeles County, B. Scott Silverman, Judge.  Affirmed.

T.J., in pro. per., for Claimant and Appellant.

T.R., in pro. per.; and Michele Lyn Gibson for Petitioner and Respondent.

_____

Maternal grandmother, T.J., appeals from an order denying her petition seeking visitation with her grandson. The record supports the trial court's exercise of discretion; we affirm the order.

## FACTUAL AND PROCEDURAL SUMMARY[1]

Conner, the child at the center of this long-running dispute, was born in 2007. His father (T.R.) and mother (A.J.) were teenagers when he was born. They all lived with the maternal grandmother and her boyfriend for the first few months of the child's life; father moved out when his relationship with mother soured, but mother and the child stayed. Grandmother and her boyfriend assumed much of the responsibility for the child's care.

Father brought a parentage action in 2008, seeking a declaration of paternity, legal custody and visitation. The relationship between mother and father had grown more and more antagonistic, as had the parents' relationships with the grandmother and her boyfriend. Competing requests for custody, visitation, and restraining orders were filed in the parentage action. In June 2009, the parents were awarded joint physical and legal custody of Conner; the court also restrained the parents from allowing the child to have contact with several people, including grandmother and her boyfriend.

Mother entered into a relationship with another man and had two more children. In December 2011, father petitioned for a modification of child custody and visitation. The parents were awarded joint legal custody, and father was awarded primary physical custody, with visitation for mother. The court ordered that Conner was not to be left alone in the presence of grandmother and her boyfriend, without supervision by mother. Mother appealed from this order, but later dismissed that appeal.

In November 2012, grandmother noticed bruises on mother's two younger children. She made a report to Department of Children and Family Services (DCFS), and

---

[1] The factual and procedural history is limited by the parties' failure to provide a clear statement of facts in their briefs and the confidentiality of the record in the related dependency case.

all three of mother's children were detained.[2] At the detention hearing, Conner was released to father and the two younger children were placed in foster care. Mother sought a restraining order against grandmother; grandmother and her boyfriend sought de facto parent status as to the three children. At the jurisdiction and disposition hearing in December 2012, the court denied the de facto parent request, and sustained an amended petition finding the younger children had been physically abused, placing all three children at risk of abuse. The court terminated jurisdiction with respect to Conner with a family law order giving sole physical custody to father, joint legal custody to mother and father, and unmonitored day visits to mother.

In December 2012, while the dependency case was pending, grandmother and boyfriend filed a petition in the parentage action seeking joinder and grandparent visitation. Father opposed; mother did not appear. The matter was heard on March 27, 2013. The court found no statutory basis for nonparents to join the parentage action, and denied the request for joinder. As to the request for grandparent visitation, the court found the boyfriend had no standing because he is not a grandparent; he has not appealed from this ruling. The court denied grandmother's request for grandparent visitation. Grandmother filed this timely appeal.

## DISCUSSION

## I

Grandmother challenges the court's denial of her request for joinder, and its denial of grandparent visitation. A denial of joinder, which is in effect a denial of leave to intervene, may be appealed because it finally and adversely determines the moving party's right to proceed in an action. (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547.) A trial court's ruling on a request for modification of judgment as to visitation is appealable under Code of Civil Procedure section 904.1, subdivision (a)(2) as an order made after judgment. (See *Chalmers v. Hirschkop* (2013)

---

[2]     We take judicial notice of the appellate decision in the resulting dependency case, *In re Jonathan H., Jr.*, No. B246776, filed March 19, 2014. (See Evid. Code, § 452, subd. (d).)

3

213 Cal.App.4th 289, 304; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377.)

The trial court correctly denied grandmother's request for joinder, finding no statutory basis for nonparents to join a parentage case. Father brought this action under the Uniform Parentage Act, Family Code section 7600 et seq. (UPA) (All statutory references are to this code unless otherwise indicated.) "In a UPA action, the only interested parties are the children and the natural or presumed mothers and fathers." (*Scott v. Superior Court* (2009) 171 Cal.App.4th 540, 544.) Section 7635 sets out who shall and who may be made parties to a parentage action: a child under the age of 12, may, and if over the age of 12, shall be made a party to the action (subd. (a)); the natural parent and each person presumed to be a parent, and each man alleged to be the natural father, may be made a party to the action (subd. (b).) No provision is made for a grandparent to be joined in the action, nor has appellant cited us to any statutory authority.[3] The court properly denied the request for joinder.

## II

Grandmother also claims the court erred when it immediately conducted the hearing on visitation, rather than ruling only on the joinder motion. After denying the request for joinder, the court informed the parties that it was treating the petition as an application for grandparent visitation. It explained that they were free to present additional comments or arguments, but "[i]f you are proposing that additional evidence be provided, you're going to have to make an offer of proof and explain why that would be necessary at this point, given the lengthy declarations that were submitted." Grandmother made no offer of proof, and proceeded to present her own sworn testimony and that of her boyfriend. Only at the conclusion of the hearing, when the court denied the petition, did grandmother assert that if she had known "this was going to be the actual petition for grandparent [visitation] hearing, I would have had more witnesses lined up to

---

[3] The only authority relied on by grandmother is an excerpt from a booklet put out by the family law facilitator's office of the Sacramento County Superior Court. It cites no authority applicable in Los Angeles Superior Court.

support my side." As before, she made no offer of proof as to the evidence she would have presented. Grandmother was not denied the opportunity to be heard on her petition.

### III

Grandmother's primary claim is that the trial court erred in denying her request for visitation. "Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory." (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.) Section 3102 permits visitation by a deceased parent's children, siblings, parents, and grandparents; section 3103 permits a court to grant grandparent visitation in specified proceedings involving the custody of a child; and section 3104 permits grandparents to petition for visitation if the grandchild's parents are not married or if certain other conditions are met. (*In re Marriage of Harris*, at pp. 219-220.)

Section 3104 is the governing statute in this case. It provides: "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: [¶] (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child. [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority."

There are two rebuttable presumptions in section 3104. Subdivision (f) sets out a rebuttable presumption affecting the burden of proof that grandparent visitation is not in the best interests of the child if the parent who has sole legal and physical custody of the child objects to such visitation. Father has sole physical custody of Conner, but he and mother share joint legal custody, so this presumption does not apply. And subdivision (e) of section 3104 creates a rebuttable presumption that grandparent visitation is not in the best interest of a minor child if the natural parents agree that the grandparent should not be granted visitation. The record contains no such agreement—father opposes visitation, and mother did not appear in court nor provide a declaration indicating her view on grandparent visitation. The court took the view that given father's objection to visitation and the absence of mother's support for visitation, "it appears" that the presumption

5

would apply. Despite that statement, the court proceeded to engage in the balancing of interests required by the statute, considering whether it would be beneficial to Conner to grant visitation rights to his grandmother, while also considering whether such an order would be an unreasonable impairment of the fundamental right of father to exercise his parental authority. (See *Troxel v. Granville* (2000) 530 U.S. 57, 65-66 [recognizing the due process right of parents to make decisions concerning the care, custody, and control of their children].) Given the court's reasoning, and the record supporting it, any error in applying a presumption under section 3104, subdivision (e) is harmless.

We review a visitation order under the abuse of discretion test. (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

It is undisputed that Conner and grandmother have a preexisting relationship. The question is whether an order for grandparent visitation at this time is in his best interest, when balanced against the right of his parents to exercise their parental authority. (*In re Marriage of Harris, supra*, 34 Cal.4th at p. 221.)

At the hearing, the court noted that the order in place prior to the detention of Conner and his brothers by DCFS permitted visitation by grandmother and her boyfriend, if monitored by mother. Grandmother admitted she and her boyfriend had seen Conner on more than one occasion while this petition was pending, most recently the week before the hearing, when mother stopped by their house. The court asked why this was not an appropriate means for grandparent visitation. According to grandmother, mother feared father would withhold her ability to visit with Conner if he found out mother was allowing the child to see grandmother and her boyfriend. Grandmother acknowledged that father had permitted them to write to Conner on his birthday, and that he told them he would let them see Conner in play therapy in the future; father reportedly said he would allow grandmother and her boyfriend to see Conner when the "court crap" was

6

over.  The reasonable inference from this evidence is that despite the history of animosity between father and grandmother, Conner has, and will continue to have, a relationship with his grandmother, with or without additional visitation orders.

Grandmother's ongoing mistrust of father's ability to parent his child also is clear from the evidence.  The history before the court included grandmother's efforts to have Conner refer to her and her boyfriend as mom and dad, and to father by his first name, an example of her apparent view that she and her boyfriend are more able to parent the child than is father.  Grandmother sought to tarnish the court's view of father's parenting ability based on his allowing Conner to visit with mother and her boyfriend, and on his allowing Conner to have visits with his (father's) family.  Grandmother also sought to undermine father's right to raise his child through communications with Conner's school regarding family disputes.  The court found, based on these and other actions, that grandmother continued to challenge father's right as a fit parent to make decisions concerning the care, custody, and control of his child, as protected under the constitution. (*Troxel v. Granville, supra*, 530 U.S. at pp. 66-67.)

In denying the request for a visitation order, the court did not determine that visitation itself was harmful to the child.  The court determined that ordering visitation in this acrimonious relationship would interfere with father's constitutionally protected parental rights, and that such interference outweighed the benefit to the child from court-ordered visitation.  This was not an abuse of discretion.

The trial court expressed the hope that, looking forward, the parties would do what is best for Conner—establish a workable and respectful relationship which will allow the child to benefit from his father's parenting and his grandmother's well-intentioned support.  We share that hope.

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.